104

CLEMENT, et al v. UNITED STATES FIDELITY & GUARANTY CO., et al.
No. 75-18594.
UNITED STATES FIDELITY & GUARANTY CO. v. AZTEC SALES, Inc., defendant,
and CLEMENT, et al, as intervenors.
No. 73-5537.
Circuit Court, Broward County.
March 7, 1977.

Preddy, Haddad, Kutner & Hardy, Miami, for Clement.

Carey, Dwyer, Cole, Selwood & Bernard, Fort Lauderdale, for United States Fidelity & Guaranty Co.

Jones & Montgomery, Fort Lauderdale, for Aztec Sales, Inc.

STEPHEN R. BOOHER, Circuit Judge.

*Declaratory decree, March 7, 1977:* These actions were consolidated for trial on January 11 and 26, 1977 by the court's order of June 3, 1976. Consistent with that order, this decree and the judgment or judgments to be hereafter entered shall be filed in Case No. 75-18594 and a copy in Case No. 73-5537, and such copy shall have the same effect as the original for all purposes. Exhibits marked in the trial "75-18594" are considered applicable to both cases as agreed by all counsel in open court.

The issues in the cases are substantially the same if not identical, viz —

- Does the United States Fidelity & Guaranty Co. ("USF&G" hereafter) policy of liability insurance provide coverage to the named insured Aztec Sales, Inc. ("Aztec" hereafter) for the claim described in the evidence?

- May USF&G decline payment by reason of late notice?

The court finds that coverage applies and that USF&G sustained no prejudice, particularly no material or substantial prejudice under the circumstances.

On September 6, 1970, Michael Scott Clement ("Clement" hereafter), about five years of age, sustained a traumatic amputation of a portion of his foot by contact with a self-propelled ride-on type lawn mower. An action was brought in another division of this court being Case No. 70-9344, wherein Aztec was one of the defendants. Aztec was defended under a policy written by Continental Insurance Company (also known in this record as Glens Falls Insurance Company) which was promptly notified of the accident, investigated the claim and retained counsel to defend the action. The trial of the case resulted in verdict and judgment for Clement and his mother in the amounts of $350,000 and $30,000 respectively. After the trial, Continental employed additional counsel to pursue post-trial motions and an appeal, if necessary. The post-trial motions filed for Aztec were successful, the judgment vacated and the verdict set aside to the extent applicable to the tort liability issue and a new trial was granted to Aztec on the

issue of liability. Through those proceedings, USF&G had received no notice of the claim. It did, however, receive notice on or about January 29, 1973.

Clement's attorneys appealed the new trial order and Continental cross-appealed. USF&G was invited to participate in the appeal but by silence apparently declined to do so. During the pendency of the appeal, a partial settlement was agreed. Prior to payment, USF&G was again asked to participate in the appeal and was informed of the intention of the parties to partially settle the claim and dismiss the appeal. Again, USF&G took no part in the appeal or the negotiations. Continental paid $245,000 in partial settlement and the appeal was voluntarily dismissed and the action returned to the trial court. Multiple demands for particiaption by USF&G were made in writing. Continental's counsel offered to provide the entire contents of his file, plus all investigation from the outset, pleadings, discovery, and transcripts of the trial. Clement's counsel offered to retry the case on all issues or on any issues at USF&G's election.

At the time, USF&G could have retried all issues and was advantaged by the thoroughness and detail of what had been done by the other carrier. Scrutiny of the extremely voluminous matters in evidence here shows there were no substantial questions regarding the facts of the accident, the status of the parties, the nature of the business operation or control of workmen. Had USF&G undertaken the defense of its insured, Aztec, it could have had a new trial on all issues plus the substantial advantage of a $245,000 set off. Its cost of defense was minimized. USF&G did not "reserve its rights" and undertake investigation and defense which the evidence shows is the usual practice and would have given USF&G the opportunity to determine the existence of any real prejudice or the absence thereof.

The claim of USF&G of prejudice is based on delay or possibilities alone, its claimsman having no knowledge of any specific act, omission or circumstance establishing actual as distinguished from possible prejudice. The injured party and the insured have met the burden of showing absence of prejudice.

The court concludes on the record as a whole including but not limited to these findings that USF&G incurred no prejudice by the delayed notice.

        *        *        *

Further, the court finds that the policy provides applicable coverage either by the clear terms thereof, or alternatively by reason of findings regarding the intent of the parties, predicated by a determination of ambiguity.

The nature of Aztec's business is described as "mobile home dealer." Yet apparently, because it was the practice of USF&G's general agent, a garage liability policy was delivered to Aztec which owned no garage, automobile sales agency, repair shop, service station, storage garage or public parking place. The parking available to Aztec was not public but restricted to its customers.

Apart from ambiguity, the court finds that the lawn mower in question was "land equipment capable of moving under its own power" and faced with a claim that the mower was being used for the benefit of Aztec and for operations necessary or incidental to its mobile home sales activities, USF&G should have provided a defense and coverage. The court finds that under Automobile Hazard 1, the mower came under the "occasional use for other business purposes" provision, was in charge of the named insured through the control exercised over the lawn care crew by its manager, Mr. Key, and the principal use of the mower was lawn care — an operation necessary or incidental to the mobile home sales.

Further, coverage is provided under the garage liability insurance. The insuring agreement provides coverage for all sums Aztec shall be legally obliged to pay as damages arising from garage operations. "Garage operations" and "garage" for the purposes of this insured means "mobile home sales agency" and all operations necessary or incidental thereto. The grass maintenance program was an important as well as necessary operation of Aztec, and at bottom incidental to its operations, and was under its control or right to control irrespective of the fact that the salary of the crew was paid by another company. The premises where Aztec conducted its "garage operations" (mobile home sales) include the entire park as evinced by the control exercised by Mr. Key and the use of the entire park for demonstration and sales promotion. As an example, potential customers were taken through the park in a golf cart and shown particularly the mobile homes and lawns in the vicinity and at the place where the accident occurred.

The court finds that Aztec was not a participant in a partnership or joint venture and that the intent of the portion of the "Persons Insured" provision which refers to joint ventures is to exclude as an insured the joint venture or partnership, as such, or a participant who is not a named insured.

The court finds that the mere leasing activities of Maccari Building Construction Corp. d/b/a Aztec Estates, does not represent a business operation and is otherwise inapplicable. The coverage applies to the premises and also to all operations necessary or incidental thereto.

The court concludes, alternatively, that competent substantial evidence exists to find that the policy is ambiguous in material portions. The threshold definition is "garage." Yet, the insured does not operate an automobile sales agency, repair shop, service station, storage garage or public parking place. The insured never owned an automobile nor ever sold an automobile. The insured had no garage building or site, yet was sold garage liability insurance which included the automobile hazard. Comparing the insuring agreement for garage operations and these facts, applied to the definitions as printed, show little or no circumstance where liability insurance would be provided for the premium charged . USF&G's general agent testified that the intent of the policy of this insured was that the definition of "garage" had to be altered (hence construed) to mean — not automobile sales agency — but mobile home sales agency. The court therefore construes the insuring agreement to provide simply —

> The company will pay on behalf of the insured all sums which the insured shall be legally obligated to pay as damages because of bodily injury arising out of the insured's mobile home sales agency and all operations necessary or incidental thereto.

Therefore, it is the finding of the court that Aztec was insured under the subject policy of insurance issued by USF&G for the claims asserted arising from the Clement accident. The court finds that the claim of the carrier of late notice does not avoid the coverage under the facts of this case. There was no prejudice.

Counsel for Aztec and counsel for Clement and his mother, are directed to promptly file cost motions and motions for fees in the cases as consolidated. An evidentiary hearing shall be scheduled to assess attorney's fees unless waived by stipulation of all parties.

The court shall, after resolution of post-trial motions related to fees and costs, enter judgment for Clement and Eileen Clement Vaughn, his mother, in the amount of $100,000 against USF&G, the amount of its applicable coverage, plus interest from March 15, 1976, the date of final judgment in Case No. 70-9344, plus fees and costs.

Jurisdiction is specifically retained to enter judgment or judgments in the cases and to assess costs, attorney's fees and interest.

*Final judgment in Clement v. United States Fidelity & Guaranty Co. only, March 7, 1977:* The declaratory decree entered in this matter on March 7, 1977, is incorporated by reference.

It is hereby ordered and adjudged —

1. The court finds for the plaintiff, Clement, and the plaintiff, Eileen Clement Vaughn, and against the defendant, USF&G, on all issues.

2. Final judgment be and is hereby entered for the plaintiffs and against the defendant as follows —

a. For Clement against USF&G in the amount of $92,105.26, this figure representing his proportionate share of the applicable policy limits, such proportion having been determined by the jury verdict in Case No. 70-9344.

b. For Eileen Clement Vaughn in the amount of $7,894.74, such figure representing her proportionate share, the proportion having been determined by the jury verdict in Case No. 70-9344.

c. For Clement in the amount of $5,295.98, such figure representing interest on the amount stated in paragraph (a) above at the rate of 6% from March 15, 1976 through March 1, 1977.

d. Interest on the amount stated in paragraph (b) above for the period March 15, 1976 through March 1, 1977 in the amount of $453.79.

e. Costs assessed in Case No. 70-9344 in the amount of $1,624.32 are hereby awarded to Eileen Clement Vaughn and final judgment in such amount is hereby entered.

f. Interest on the amount stated in paragraph (e) above in the amount of $93.38 for the period March 15, 1976 through March 1, 1977.

The total judgment herein for the plaintiffs against USF&G be and is in the amount of $107,467.47 as of March 7, 1977.

3. Jurisdiction is retained to assess attorney's fees and costs in this action. (By letter dated February 14, 1977 to the court with proposed final judgment not employed by the court, counsel for USF&G acknowledges that the court may retain jurisdiction for the purpose of assessing attorney's fees and costs subsequent to the entry of this judgment.)

4. It appears to the court that Aztec was joined in this action so as to complete the record and bring before the court all parties that have an interest in the subject policy of insurance. The findings specified in the declaratory decree executed this date and the

terms of the foregoing final judgment, together with entry of final judgment in Case No. 73-5537, which more directly involved Aztec, such final judgment also being incorporated by reference herein, renders the issues in this action as to Aztec moot.

Wherefore final judgment be and the same is hereby entered for plaintiffs, Michael Scott Clement and Eileen Clement Vaughn, in the total amount of $107,467.47, for which sum let execution issue forthwith payable to the plaintiffs as specified in sub-paragraphs (a) through (f) above, with interest thereon from March 1, 1977.